NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES S. HILDEBRANDT,<br><br>    Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No.: 21-13552<br><br>**OPINION** |

**CECCHI, District Judge.**

**I. INTRODUCTION**

Before the Court is the appeal of James S. Hildebrandt ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II. BACKGROUND**

Plaintiff is a 56-year-old male with a high school level of education, living in Newton, New Jersey with his wife, Carol Johnson. Tr.[1] at 56–57. He has suffered from a seizure disorder for approximately 30 years. *Id.* at 21.

Despite his condition, Plaintiff reads in the morning, and testified that he could do simple math problems, including performing basic financial calculations. *Id.* He also drives for pleasure

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 5.

1

on back roads in the Delaware River Gap, while his wife does the day-to-day driving. *Id.* at 58. Plaintiff reports that he experiences no physical problems. *Id.* at 71–72. Indeed, he represented that he is not a sedentary person. *Id.* at 22. Similarly, he testified that he does some chores around the house, including gardening and other landscaping activities. *Id*. at 72.

Previously, Plaintiff worked as a machinist, a position he held for 20 years. *Id.* at 59. In 2006, he suffered a seizure while on the job, and shortly thereafter, stopped working in that capacity believing it was too dangerous given his health condition. *Id*. at 62–63. Instead, beginning in October 2006, Plaintiff worked as a clerk at his wife's shipping business. *Id.* at 60. Records indicate he held this position until approximately 2018. *Id.* at 60, 76.

On January 4, 2019, Plaintiff filed an application for DIB, alleging disability beginning on January 3, 2018 due to epilepsy. *Id.* at 11, 96. Plaintiff's claim for DIB was denied initially on March 4, 2019, and upon reconsideration on October 4, 2019. *Id.* at 11. Plaintiff requested and was granted a hearing before an ALJ held on July 10, 2020, at which Plaintiff and an impartial vocational expert testified. *Id.*

On July 27, 2020, the ALJ determined that Plaintiff was not disabled at any time from January 3, 2018, the alleged onset date, through the date of the decision, and denied his request for benefits. *Id.* at 23. Thereafter, on May 14, 2021, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id*. at 1. This appeal followed. ECF No. 1.

### III.   LEGAL STANDARD

#### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own

factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

      **B.**    **Determining Disability**

In order to be eligible for benefits under the SSA, a claimant must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if his physical or mental

impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C.  Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit his ability to work. *Id.* Third, if he has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. *Id.* Fifth, if his RFC is not sufficient

to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Id.* at 555.

## IV.   DISCUSSION

### A.   Summary of the ALJ's Decision

At step one, the ALJ determined that although Plaintiff worked after his alleged disability onset date, January 3, 2018, his work activity did not rise to the level of substantial gainful activity. Tr. at 14. As such, the ALJ proceeded with the sequential analysis. *Id.*

Next, at step two, the ALJ found that Plaintiff's seizure disorder constituted a severe impairment. *Id.* Moreover, the ALJ also concluded that Plaintiff suffered from the following non-severe impairments: right bundle branch block; chronic rhinitis/seasonal allergic rhinitis; deviated septum; acute sinusitis; vitamin D deficiency; acute metabolic encephalopathy second to seizure disorder; hyponatremia; cellulitis with abscess; and dysphagia. *Id.* The ALJ noted he considered these non-severe impairments when assessing Plaintiff's residual functional capacity. *Id.* Finally, the ALJ recognized that Plaintiff alleged he experienced headaches/migraines secondary to his seizure disorder; however, the ALJ determined that pursuant to Social Security Regulation ("SSR") 19-4P, such symptoms did not constitute a medically determinable impairment. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings.

Tr. at 14–15. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. Based on all the evidence in the record, the ALJ found that during the relevant period, Plaintiff had the RFC to "perform a full range of work at all exertional levels" but with some limitations. Tr. at 15. Specifically, the ALJ determined that Plaintiff could never climb ladders, ropes or scaffolds" and could only "occasionally balance." *Id.* Further, the ALJ found that Plaintiff could "never work at unprotected heights, never work around hazardous moving mechanical parts, [or] never operate a motor vehicle commercially." *Id.*

At step four, based on Plaintiff's background, work experience, RFC, and testimony from a vocational expert, the ALJ concluded that Plaintiff could perform his past work as a shipping clerk "because the work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." Tr. at 23. Accordingly, the ALJ found that Plaintiff was not disabled and denied his application for DIB. *Id.*

      **B.**      **Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff asserts the ALJ committed two errors. First, Plaintiff argues the ALJ erred at step three by concluding that Plaintiff's seizure disorder did not meet the necessary requirements enumerated in Listing 11.02 to be found presumptively disabled. ECF No. 9 at 17–19. Second, Plaintiff contends that the ALJ incorrectly constructed Plaintiff's RFC. *Id.* at 19–21. The Court will consider each of Plaintiff's arguments in turn.

      **1.**      **Step Three Findings**

Plaintiff asserts the ALJ erred at step three by finding that Plaintiff's seizure disorder did not satisfy the requirements in Listing 11.02, thus concluding that Plaintiff was not presumptively disabled. Specifically, Plaintiff contends that the ALJ incorrectly found Plaintiff did not experience

6

the requisite number of seizures while taking prescribed medication, and also incorrectly determined that Plaintiff suffered from no marked limitations resulting from the seizures. *Id.* at 18–19. In support of this argument, Plaintiff claims that, in contrast to the ALJ's conclusion, Plaintiff's wife's personal notes tracking Plaintiff's epileptic episodes indicate he had seizures frequently enough to be considered presumptively disabled. *Id.*

To satisfy Listing 11.02, and thus be considered presumptively disabled, a plaintiff must show he "experiences generalized tonic-clonic seizures at least once per month for three consecutive months, or where the [plaintiff] experiences dyscognitive seizures at least once per week for three consecutive months, despite adherence to prescribed treatment." *Bucci for & on Behalf of Eland*, No. 19-cv-368, 2020 WL 709516, at *3 (W.D. PA. Feb. 12, 2020) (quoting *Snow v. Berryhill*, No. 18-cv-434, 2019 WL 1873551, at *4 (N.D. Ind. Apr. 26, 2019)); *see* 20 C.F.R. Part 404, Subpart P, App'x 1 (Listing 11.02(A) and (B)). Listing 11.02 can also be satisfied if a plaintiff establishes that he suffers from "less frequent but more severe seizures that result in marked limitations in the [plaintiff]'s ability to function." *Bucci for & on Behalf of Eland*, 2020 WL 709516, at *3; *see* 20 CR 404, Subpart P, App'x 1 (Listings 11.02 (C) and (D)). The determination of whether Plaintiff has demonstrated that his seizure disorder meets the requirements in 11.02 is a medical one to be made based on the medical evidence in the record. *Peterson v. Comm'r of Soc. Sec.*, No. 16-cv-2912, 2018 WL 953345, at *2 (D.N.J. Feb. 20, 2018); *Chupcavich v. Colvin*, 15-cv-2467, 2016 WL 5404574, at *7 (M.D. Pa. Sept. 28, 2016) ("The determination of whether a [plaintiff] meets or equals a listing is a medical one.").

Here, the ALJ first determined that Listing 11.02A was not satisfied because Plaintiff did not have a seizure once a month for three months, and further some of Plaintiff's seizures resulted from a failure to adhere to his prescribed treatment plan. Tr. at 15. The ALJ next found that Listing

7

11.02C was not met because the record did not show that Plaintiff experienced a seizure once every two months for at least four consecutive months. *Id.* Moreover, the ALJ determined that Plaintiff did not experience a marked limitation, as required by that Listing. *Id.* Similarly, the ALJ found that Plaintiff failed to meet the requirements in Listings 11.02B and 11.02D because his seizures did not occur with enough frequency, and medical records did not indicate that his seizures resulted in marked limitations. *Id.*

The Court finds that the ALJ's conclusion at step three is supported by the substantial evidence in the record. Specifically, the ALJ considered Plaintiff's extensive history of seizures. Indeed, he explicitly discussed treatment notes describing Plaintiff's epileptic episodes, occurring between June 2017 and May 2019. See Tr. at 16–20. Moreover, the ALJ explained that some of these seizures were attributable to Plaintiff's failure to adhere to his treatment plan (Tr. at 17, 18, 19), or environmental factors such as over-caffeination, poor sleep, or stress (Tr. at 17, 18, 19). Based on this review, the ALJ determined that Plaintiff's seizures did not occur with enough frequency while adhering to his treatment plan, nor leave him with marked limitations to satisfy the requirements of Listing 11.02. As the ALJ considered Plaintiff's extensive seizure history, including reasons for the onset of particular epileptic episodes, the ALJ's step three finding was based on substantial evidence. *See Anwan L. v. Comm'r of Soc. Sec.*, No. 21-cv-1397, 2022 WL 2439554, at *6 (D.N.J. July 5, 2022) (finding an ALJ's step three analysis sufficient where, like here, the ALJ considered plaintiff's specific epileptic episodes as well as plaintiff's adherence to his prescribed treatment plan).

While Plaintiff's argues that the ALJ erred at step three because notes kept by his wife indicate he has experienced the necessary number of seizures to be considered presumptively disabled (ECF No. 9 at 18–19), that argument is unavailing. An ALJ is obligated to considered

8

medical sources when conducting a step three analysis. *Peterson*, 2018 WL 953345, at *2. However, a plaintiff's spouse is not a medical source, and thus here the ALJ was not required to consider the wife's seizure notes. *Seewagen v. Comm'r of Soc. Sec.*, No. 18-cv-1818, 2019 WL 1568277, at *6 (D.N.J. Apr. 10, 2019) (citing 20 C.F.R. 404.1513(d)) (noting that a plaintiff's spouse does not qualify as an acceptable medical source). Moreover, absent his wife's notes regarding his condition, Plaintiff identifies no additional medical evidence in the record demonstrating he is presumptively disabled under the Listing. *See* ECF No. 9 at 18–19; *see also Bucci for & on Behalf of Eland*, 2020 WL 709516, at *3; *Gambino v. Comm'r of Soc. Sec.*, No. 17-cv-7241, 2018 WL 5818539, at *2–*3 (D.N.J. Nov. 7, 2018) ("Other than emphasizing the testimony of . . . Plaintiff's wife . . . absent from the brief is any statement of what evidence supports the listing or listings Plaintiff contends he meets or equals. Plaintiff does not show how the evidence of record supports a different determination at step three.").

Accordingly, the Court finds the ALJ's determination at step three that Plaintiff was not presumptively disable under Listing 11.02 was based on the substantial evidence in the record.

   **2.   RFC Errors**

Next, Plaintiff challenges the ALJ's formulation of Plaintiff's RFC. The responsibility for assessing and assigning a claimant's RFC rests solely with the ALJ, not with any particular medical source. 20 C.F.R. §§ 404.1527(d)(2)-(3); 404.1546(c). The ALJ reviews "all of the relevant medical and other evidence" in the record and resolves conflicts in the evidence in determining the plaintiff's RFC. 20 C.F.R. § 404.1545(a)(3). Further, the ALJ must "provide a 'clear and satisfactory explication' of the basis on which his determination rests." *Mays v. Barnhart*, 78 F. App'x 808, 812 (3d Cir. 2003) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)).

Specifically, Plaintiff challenges the RFC on two grounds. First, Plaintiff asserts that his

RFC is incomplete because it does not include allowances for being off-task, absent, or needing some limitations to simple routine work. ECF No. 9 at 20–21. Second, Plaintiff contends that the ALJ should have found the medical source statement of Dr. Geller, Plaintiff's neurologist, persuasive because it is consistent with and supported by the record. *Id.* at 21. The Court will consider each of these arguments in turn.

### a. Incomplete RFC

First, Plaintiff asserts that his symptoms for seizures, headaches, dizziness, and fatigue cause him to be off-task, absent, or need limitations to simple routine tasks, and, as a result, the ALJ erred by not including these qualifiers in Plaintiff's RFC. ECF No. at 20. However, the ALJ explicitly considered each of these symptoms as they were described in treatment notes and Plaintiff's testimony. *See e.g.,* Tr. at 16–22 (seizures); 14, 16, 17, 18, 19, 20, 21 (headaches); 20, 21 (dizziness); 20, 21 (fatigue). The ALJ then weighed these symptoms, and, as is within his discretion, assigned Plaintiff a RFC based on the entirety of the evidence. Indeed, while Plaintiff essentially argues that the ALJ should have reached a different conclusion (i.e. should have formulated a different RFC which included limitations for seizures, headaches, dizziness, and fatigue), such an argument amounts to a disagreement with the ALJ's findings and does not justify disturbing the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d. Cir. 1999) ("We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently."); *Guzman v. Colvin*, No. 15-cv-841, 2016 WL 3647990, at *2 (D. Del. July 8, 2016) ("It is certainly possible to interpret the facts differently than the ALJ did, but that does not mean there was not a substantial basis for the ALJ's conclusion.").

Plaintiff also argues that his RFC is deficient because the ALJ failed to consider his testimony and the written statements of his wife. ECF No. 9 at 21. However, this argument also

lacks merit. Beginning with Plaintiff's testimony, the ALJ explicitly discussed it, noting, among other things, Plaintiff's statements regarding his work history, his seizure disorder and related symptoms, treatment plan, and how he spends his free time. Tr. at 20–22. Based on this testimony, the ALJ concluded that although Plaintiff's seizure disorder could cause his symptoms, Plaintiff's statements and subjective complaints were inconsistent with the medical evidence in the record. *Id.* at 22. Accordingly, the ALJ properly considered Plaintiff's testimony. *See Scott v. Kijakazi*, No. 20-cv-1793, 2022 WL 2441059, at *1 n.2 (W.D. Pa. July 4, 2022) (finding that an ALJ appropriately considered plaintiff's testimony by referencing it in the decision and weighing it along with objective evidence in the record).

Turning next to his wife, Plaintiff asserts that the ALJ should have considered her written submissions in making his findings. ECF No. 9 at 21; ECF No. 5-6 at 295–302. However, the ALJ was not required to reference her submissions in constructing Plaintiff's RFC because, as noted above, a spouse is not a medical source. *See Tomczak v. Kijakazi*, No. 21-cv-14107, 2022 WL 2473441, at *10 (D.N.J. July 6, 2022) (citing 20 C.F.R. § 404.1520c(d)) (noting that an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources"). And further, how nonmedical source evidence is considered by the ALJ is within the ALJ's discretion. *D.G. v. Comm'r of Soc. Sec.* No. 20-cv-2774, 2021 WL 3047065, at *5 (D.N.J. July 20, 2021) (finding that an ALJ may chose to not consider reports submitted by plaintiff's spouse).

In sum, the Court finds that the ALJ constructed Plaintiff's RFC based on the substantial evidence in the record. Indeed, "the ALJ detailed the record evidence in a narrative discussion throughout several single-spaced pages with specific citations to the record, explicitly considered Plaintiff's functional limitations, and crafted an RFC that reflected those limitations." *Rawls v.*

*Comm'r of Soc. Sec.*, No. 20-cv-9305, 2022 WL 950816, at *6 (D.N.J. Mar. 30, 2022) (quoting *Nieves v. Saul*, No. 18-cv-10748, 2021 WL 941923, at *11 (D.N.J. Mar. 12, 2021)).

### b. Dr. Geller's Medical Source Statement

Second, Plaintiff asserts that the ALJ should have found Dr. Geller's opinions in his medical source statement[2] persuasive because they are consistent with and supported by the record. ECF No. 9 at 20–21. When analyzing a medical opinion, the SSA regulations[3] provide a framework for the ALJ to determine the persuasiveness of that opinion based on the following factors: (1) supportability (*i.e.*, whether the medical opinion is supported by objective medical evidence); (2) consistency (*i.e.*, whether the medical opinion is consistent with other medical and nonmedical sources in the record); (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also David K.*, No. 20-12419, 2022 WL 225451, at *6 (D.N.J. Jan. 26, 2022). When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and

---

[2] A medical source statement is a medical opinion "about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." *Dyson v. Astrue*, No. 09-cv-3846, 2010 WL 2640143, at *1 n.1 (quoting SSR 96-5p).

[3] In his brief, Plaintiff cites to caselaw that applies the "treating physician rule," Pl. Br. at 17, which required the ALJ to give controlling weight to a treating source's opinion, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). However, the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017); *see also David K. v. Kijakazi*, No. 20-12419, 2022 WL 225451, at *6 (D.N.J. Jan. 26, 2022). Because Plaintiff's claim was filed on August 10, 2018, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

consistency.[4] *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Here, the ALJ's finding that Dr. Geller's opinions in his June 2019 medical source statement (ECF Nos. 5-4 at 146–152; 5-12 at 1440–1448) were unpersuasive because they were not supported by or consistent with the record is based on substantial evidence. Specifically, in his source opinion, Dr. Geller opined that Plaintiff suffered from tonic clonic and dyscognitive seizures, with a related loss of consciousness or alteration with awareness. Tr. at 19. Dr. Geller further found that Plaintiff experienced other symptoms attributable to his seizure disorder, including confusion, exhaustion, headaches, and forgetfulness. *Id.* Dr. Geller also concluded that because Plaintiff suffered from seizures two to three times a month, Plaintiff could not drive or work. *Id.* at 19–20.

However, the record, including Dr. Geller's own treatment notes, do not support the findings in Dr. Geller's source opinion report. For example, Dr. Geller's treatment notes from October 2017, April 2018, August 2018, and December 2018 indicate that Plaintiff exhibited normal neurological function; he was alert, had good comprehension, was fluent with language,

---

[4] With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

and oriented. *Id*. at 17–18. Dr. Geller also noted in treatment notes from October 2019 that Plaintiff's last seizure was in May 2019. Tr. at 20; *see Elana K. v. Kijakzi*, No. 20-cv-6931, 2021 WL 5822793, at *7 (D.N.J. Dec. 8, 2021) (determining that an ALJ's decision to find a treating doctor's opinion unpersuasive was supported by substantial evidence where the opinion was inconsistent with other opinions offered by the doctor in the record). Moreover, Plaintiff's own testimony contradicts Dr. Geller's source opinion. Indeed, in contrast to Dr. Geller's assertions that Plaintiff could not drive, do any work, and experienced seizures two to three times a month, Plaintiff represented that he enjoys driving his jeep in the Delaware Water Gap (*id*. at 58), that he was able to perform tasks such as landscaping around his home (*id.* at 72), and that as of January 2020 his last seizure was May 2019 (*id.* at 20).

Accordingly, the ALJ's decision to find Dr. Geller's opinion unpersuasive was based on the substantial evidence in the record.

## V.     CONCLUSION

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** July 28, 2022

s/ Claire C. Cecchi
_____
**CLAIRE C. CECCHI, U.S.D.J.**
